**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FLUENCE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>M/V BBC FINLAND, bearing International Maritime Organization No. 9593684 (the "Vessel"), its cargo, apparel, tackle, and appurtenances, etc. in rem,<br><br>　　　　　　　　Defendant. | Case No.: 3:21-cv-01239-BEN-JLB<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST FOR APPOINTMENT OF A SUBSTITUTE CUSTODIAN**<br><br>**[ECF No. 16]** |

## I. <u>INTRODUCTION</u>

Plaintiff FLUENCE ENERGY, LLC, a Delaware limited liability company ("Plaintiff") brings this verified complaint, *in rem*, against Defendant M/V BBC FINLAND, bearing International Maritime Organization No. 9593684 (the "Vessel"), its cargo, apparel, tackle, and appurtenances, etc., for breach of a maritime contract and negligence, seeking arrest and money damages. *See* Complaint, ECF No. 1 ("Compl.").

Before the Court is the Joint Motion for an Order Appointing a Substitute Custodian. ECF No. 16 (the "Motion"). After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Plaintiff's Motion. ECF No. 16.

-1-

## II. BACKGROUND

### A. Factual Background[1]

Plaintiff alleges that its agent arranged for the transportation of **$109,677,308.50** in cargo containing its Gen6 Cubes from Hai Phong, Vietnam to San Diego, California. Compl. at 5, ¶ 22. However, on April 28, 2021, during transit, the Vessel experienced "rolling, pitching, and pounding with persistent heavy sea spray over the deck," followed by a report of smoke in the cargo holds. *Id.* at 6, ¶ 24. On May 8, 2021, after stopping at a port of refuge (Aomori, Japan) to inspect the goods, various surveyors inspected the containers and goods inside them, and discovered that "a cause of the . . . damaged containers . . . was . . . improper usage of twist locks and insufficient lashing to the containers." *Id.* at 6, ¶¶ 25-28.

On June 16, 2021, Plaintiff paid its supplier in full for the cargo pursuant to the prevailing purchase orders.[2] Compl. at 7, ¶ 32. Two days later, on June 18, 2021, the Vessel departed Aomori, Japan to continue the voyage to San Diego, California, but the Vessel was only partly loaded with 246 containers[3] and short the number of containers contracted for in the sea waybills. *Id.* at 7, ¶ 33. Plaintiff estimates its current losses due to the damage to the cargo caused by the Vessel, and depending on the results of the inspection, is no less than $30 million. *Id.* at 7, ¶ 35.

On or about July 8, 2021, at approximately 5:04 a.m., the Vessel moored starboard side to Pier 105 at the SSA Marine Terminal in the Port of San Diego, California. ECF

---

[1] The Court previously set forth a detailed recitation of the facts of this case, which it incorporates herein by reference. *See Fluence Energy, LLC v. M/V BBC Finland, bearing Int'l Mar. Org. No. 9593684*, 2021 WL 2895722, at *1-4 (S.D. Cal. July 9, 2021).

[2] The record is unclear as to whether Plaintiff knew the goods had been damaged at the time Plaintiff paid for the goods.

[3] The Complaint indicates that (1) the Vessel was to depart with a total of 348 40-foot high-cube ("HC") containers, Compl. at 4, ¶¶ 12-13, 5, ¶ 19; (2) 87 HC containers remained in Japan as they were too damaged to transport, *id.* at 7, ¶ 30; and (3) 246 HC containers continued onto San Diego, *id.* at 7, ¶¶ 33-34. Thus, it is unclear what happened to 15 of the HC containers because 348-87 = 261, which is 15 higher than the number that ended up making the voyage to San Diego.

No. 6 at 7:9-11 (citing Declaration of Matthew P. Vafidis, ECF No. 6-1 ("Vafidis Decl.") at 2, ¶ 2). The Vessel is currently still in San Diego, California, and Plaintiff has informed the Court that it has inspected the cargo.

### B. Procedural History

On July 8, 2021, Plaintiff filed suit alleging two claims for relief for (1) breach of maritime contract of carriage and (2) negligence. Compl., ECF No. 1. The summons issued that day but was not served on Defendant until July 10, 2021. ECF No. 2. Also on July 8, 2021, Plaintiff filed two *Ex Parte* Applications: (1) an *Ex Parte* Application for an Order Issuing a Warrant for the Arrest of the Vessel, ECF No. 5; (2) an *Ex Parte* Application for an Order (a) Appointing a Substitute Custodian, and (b) Permitting Normal Operations While Under Arrest, ECF No. 6.

On July 9, 2021, the Court issued an order (1) **GRANTING** Plaintiff's *Ex Parte* Application for an Order Issuing a Warrant for the Arrest of the Vessel, ECF No. 5; (2) **DENYING** Plaintiff's *Ex Parte* Application for an Order Appointing a Substitute Custodian, ECF No. 6; and (3) **GRANTING-IN-PART** Plaintiff's *Ex Parte* Application for an Order Permitting Normal Operations While Under Arrest, ECF No. 6. Order, ECF No. 7.

The Court denied the previous request for appointment of Alan Swimmer of National Maritime Services ("NMS") as Substitute Custodian for several reasons: First, the proposed custodian provided "no discussion as to his specific experience beyond generally stating that his company (as opposed to him personally) . . . has successfully administered hundreds of seizure, arrest and custody cases related to marine vessels." Order, ECF No. 7 at 15 (citing Swimmer at 2, ¶ 1). Second, Mr. Swimmer did not indicate how many insurance policies NMS has; what types of insurance (*e.g.*, commercial general liability, ocean marine, and/or excess/umbrella policies); and the amounts of coverage. *Id.* at 15; *see* S.D. Cal. Civ. R. E.1(c)(2) (requiring a party seeking to appoint a substitute custodian to show "that such . . . person can and will safely keep the vessel and has in effect adequate insurance to cover any liability for failure to do so"). Further, neither Plaintiff nor Mr.

Swimmer provided an estimate of the value of the Vessel, meaning even if policy amounts had been provided, the Court would still be unable to ensure the value of the Vessel being arrested was adequately secured by the policies. *Id.* Third, Mr. Swimmer's Declaration as well as the Application indicated the costs associated with Mr. Swimmer serving as a custodian would be $39,750.00 plus an additional sum of $5,000.00 per day, while the estimate attached to his exhibit showed a monthly charge of $38,700.00 plus a daily charge of $1,2900.00. *Id.* at 14. Thus, Plaintiff needed to clarify actual costs as well as provide a comparison associated with having the United States ("U.S.") Marshal Service to take custody of the Vessel because Local Rule E.1 requires the Court's order to fix fees to be charged for any services rendered in maintaining and keeping the vessel safe, which it cannot do if those costs are unclear. S.D. Cal. Civ. R. E.1(c)(2).

On Monday, July 12, 2021, the U.S. Marshals Service confirmed to Plaintiff that the Warrant of Arrest was executed on the Vessel over the weekend. *See* ECF No. 10. Due to safety issues with the Vessel, the U.S. Marshals Service was unable to take control of the Vessel, but in accordance with the Court's order, posted the Arrest Warrant, Complaint, and Order of the Court on the Vessel and has ensured the Vessel does not depart from its port without having to take over control of the Vessel.

On July 10, 2021, Plaintiff had its proposed substitute custodian, Mr. Swimmer, file a supplemental declaration (1) elaborating on his experience as a custodian of similar vessels; (2) clarifying that the costs to maintain the boat would be approximately $5,000.00 per day; (3) explaining that the cost for the U.S. Marshals Service would be a $5,000.00 deposit along with a check for $50,000.00 for an estimated ten days; and (4) providing a Certificate of Liability Insurance showing four separate insurance policies, including a: (a) $2,000,000.00 commercial general liability occurrence-based policy; (b) non-owned automobile liability policy; (c) $3,000,000.00 occurrence-based umbrella liability policy with a $25,000.00 retention; (d) workers compensation policy; and (e) $1,000,000.00 professional liability insurance policy. ECF No. 8. Despite filing a new declaration, Plaintiff never filed a renewed request for appointment of a substitute custodian along with

that declaration until July 16, 2021. ECF No. 16.

On July 12, 2021, Plaintiff filed a Proof of Service, evidencing that it served the Vessel in compliance with the Court's July 9, 2021 Order. *See* ECF Nos. 10, 12.

On July 14, 2021, the Court held a status hearing with counsel for both Plaintiff and Defendant[4] at 10:30 a.m. ECF No. 15. During the hearing, both parties agreed that the value of the Vessel is $7.5 million and indicated they were working towards filing a Letter of Undertaking ("LOU")[5] with the Court, which would allow the Vessel to continue its operations without the need for a substitute custodian. *Id.* Because the parties indicated they were working towards a LOU, the Court continued the hearing in the matter to 2:00 p.m. that day to allow the parties additional time to work towards an agreement. *Id.* At

---

[4] To date, Defendant's counsel's appearance in this case have been limited to special/restricted appearances pursuant to Rule E(8) of the Supplemental Federal Rules of Civil Procedure and do not constitute a general appearance, consent to service, or consent the jurisdiction of this Court.

[5] "Any vessel, cargo, or other property in the custody of the marshal or other person or organization having the warrant may be released . . . upon . . . acceptance and approval of a stipulation, bond, or other security, signed by the party on whose behalf the property is detained or the party's attorney . . . if all costs and charges of the court and its officers shall have first been paid." FED. R. CIV. P., Supp. R. E(c). In admiralty cases, the Supreme Court has approved alternative forms of security as opposed to depositing the funds or transferring the vessel interest by allowing the plaintiff in limitation to stipulate to the value of the vessel. *Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.,* 273 U.S. 207, 218-19 (1927). "[A] stipulation is generally accepted as security if backed up by insurance covering the vessel's potential liabilities." 29-708 Moore's Fed. Prac.—Civ. § 708; *see also* 3 Benedict on Admiralty § 14, at 2–12 (7th ed. 2008) ("If the ship is still useful to [the shipowner], and he desires to keep her in operation, he will have her appraised and furnish the court with an approved surety company stipulation or pay the cash value for which the ship is appraised, plus freight."). Such a stipulation coupled with a letter of undertaking qualifies as sufficient security. *See, e.g., Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294, n. 4 (9th Cir. 1997) (holding the defendants' "of undertaking, which remains in effect, is sufficient to perfect in rem jurisdiction in the absence of the ship's arrest"); *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 753 (2d Cir. 1988) (approving use of a letter of undertaking from an insurer, "agreeing to assume any liability of the shipowners up to the stipulated amount" as security).

In this case, both parties have stipulated to the value of the Vessel ($7,500,000.00); however, the parties could not agree on the terms of a letter of undertaking.

the continued hearing, the parties advised they were "in agreement on 99% of the terms" for the LOU, but Plaintiff included one term with which Defendant did not agree, and which Plaintiff refused to remove. This term would allow Plaintiff to continue arresting other vessels owned by the Vessel's owners despite Defendant's insurer issuing a LOU.[6]

The Court ordered the parties to return the following day, July 15, 2021, at 2:00 p.m., to allow them additional time to attempt to reach a resolution and avoid having to appoint a substitute custodian, which would likely prove more costly than the LOU. ECF No. 15. It also ordered them to return with a stipulation resolving the issues of the arrest, bond, and LOU, or if those issues remained unresolved, to appear before the magistrate judge for a settlement conference. *Id.* The Court also ordered Plaintiff to pay an additional $5,000.00 to compensate the U.S. Marshals Service for securing the Vessel. *Id.*

On July 15, 2021, the Court held a third hearing with the parties at which time the parties advised they could not reach an agreement as to the LOU; however, Plaintiff orally renewed its application for an Order appointing NMS as substitute custodian of the Vessel in lieu of the U.S. Marshals Service. ECF No. 17. Plaintiff also requested an order permitting cargo handling while under Arrest, but this request has already been granted by the Court's previous order. *See* Order, ECF No. 7 at 18 (ordering that "[a]ny ongoing operations may be maintained except to the extent such operations involve the Vessel departing from the Port of San Diego").

After the parties were unable to resolve this matter, they appeared before Magistrate Judge Michael S. Berg but were still unable to reach an agreement.

## III. LEGAL STANDARD

Federal courts possess exclusive jurisdiction over admiralty and maritime claims.

---

[6] Given the Court's jurisdiction is *in rem*, rather than *quasi in rem*, it is unclear what basis Plaintiff would have to arrest other vessels that lack of any involvement in the damage to Plaintiff's cargo. Even if Plaintiff had filed suit asserting jurisdiction *quasi in rem*, also naming the Vessel's owners, it is likely that it would still be unable to arrest additional vessels not involved in the transport of the cargo at issue in this case until it had secured a judgment in its favor.

U.S. CONST. art. III, § 2; 28 U.S.C. § 1333(1); *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 918 (9th Cir. 2002). The Federal Maritime Lien Act, 46 U.S.C. § 31342, entitles "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner," to (1) a maritime lien on the vessel; (2) bring a civil action in rem to enforce the lien; and (3) to pursue those rights without alleging or proving in the action that credit was given to the vessel. 46 U.S.C. § 31342(a); *see also Ventura*, 305 F.3d at 919. "To commence an action in rem against a vessel, the plaintiff must file a verified complaint that describes the vessel 'with reasonable particularity' and states that the vessel 'is within the district' or will be so 'while the action is pending.'" *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 529 (9th Cir. 2018). "If the plaintiff meets these conditions, the district court must take the boat into custody—unless the plaintiff requests otherwise—by issuing an arrest warrant to be served by the marshal." *Id.* (citing Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(3)(a)–(b), E(3)(b)).

"Once the district court issues warrants for the arrest of the vessels pursuant to Rule C, and the warrants are successfully served, jurisdiction is complete." *Barnes*, 889 F.3d at 529 (internal quotations omitted). "After the vessel is arrested, the owner is entitled to 'a prompt post-seizure hearing at which he can attack the verified complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings up to that point.'" *Id.* at 531 (citing, *inter alia*, Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(4)(f)).

The Southern District of California's Local Rules governing *in rem* actions provide that once a Vessel is arrested pursuant to process issued by the Court, "the marshal must place one or more keepers thereon who must remain aboard until the vessel is released or disposed of pursuant to Rule E, unless otherwise ordered." S.D. Cal. Civ. R. E.1(c)(2). However, "[o]n motion of any party, made after notice to the marshal and all parties who have appeared, a judge may order that custody of the vessel be given to the operator of a marina or similar facility, repair yard, or company regularly carrying on the business of ship's agent," upon a finding "that such firm or person can and will safely keep the vessel and has in effect adequate insurance to cover any liability for failure to do so." *Id.* Further,

"[i]f the vessel must be moved to the place where custody will be maintained, a judge may also require insurance or other security to protect those having an interest in the vessel, as well as those claiming against her, from loss of or damage to the res, or liability of the vessel, incurred during the movement." *Id.* This "order allowing such custody must fix fees to be charged therefor and for any other services to be rendered the vessel and must provide for their payment to the marshal in advance." *Id.*

## IV. DISCUSSION

After the Court's denial of Plaintiff's initial request for appointment of Mr. Swimmer as the substitute custodian of the Vessel, *see* Order, ECF No. 7, Plaintiff submitted a supplemental declaration from Mr. Swimmer addressing the deficiencies in the previous application, *see* ECF No. 8, and now, reiterates its request.

The Court's previous denial was due to inadequate information as to Mr. Swimmer's experience, NMS' insurance, and the costs entailed with Mr. Swimmer's custodianship of the Vessel. *See* Order, ECF No. 7. Mr. Swimmer's supplemental declaration addresses those issues. First, he indicates he has sufficient experience by stating that he has "personally managed the custody of 120 US-based vessel arrests, 68 of which involved complex, commercial ships." ECF No. 8 at 2, ¶ 3. Second, he states that NMS has a $1 million per occurrence policy and $3 million umbrella liability coverage. *Id.* at 2-3, ¶ 4. Although the Court notes that $4 million in coverage does not equate to the $7.5 million stipulated value of the Vessel, because the Vessel and its owners indicate they do not object to the Court's appointment of Mr. Swimmer as substitute custodian, the Court construes this as the Vessel's owners waiving any objection that such insurance is inadequate. Third, Mr. Swimmer clarifies the costs associated with his custodianship, which are as follows:

|  | Amount: | |
|---|---|---|
|  | **NMS:** | **U.S. Marshals Service:** |
| **One-Time Charges:** | | |
| **Mobilization of the Vessel:** | $1,950.00 | Unknown |
| **Travel Costs:** | $1,000.00 | Unknown |
| **Subtotal:** | **$2,950.00** | Unknown |

| Daily Recurring Charges: | | |
|---|---|---|
| **Full-Time Onboard Watchman:** | $500.00 | Unknown |
| **Daily Custody Fee:** | $273.00 | Unknown |
| **Estimated Surcharge for Maritime Employers Liability Coverage:** | $333.00 | Unknown |
| **Subtotal:** | **$1,106.00** | **$5,000.00** |
| **15% Handling Fee on Third-Party Charges such as Fuel for Generators, Berthage, &/or Crew Pay:** | TBD | TBD |

*See* ECF No. 8 at 3, ¶ 5.

Thus, Mr. Swimmer's appointment is more economical than continued custodianship by the U.S. Marshals Service. Plaintiff has remedied the previous problems with Mr. Swimmer's appointment, and his appointment is now appropriate.

## V. <u>CONCLUSION</u>

The Court, therefore, **ORDERS** that the Joint Motion for Appointment of Substitute Custodian is **GRANTED** as follows and until further order of this Court:

1. The U.S. Marshals for the Southern District of California will surrender the possession of the Vessel to the substitute custodian, Alan Swimmer of NMS. Mr. Swimmer will retain the Vessel in his custody for possession and safekeeping.

2. Upon transfer of the Vessel to Mr. Swimmer, he and/or NMS will act as substitute custodian of the Vessel, *custodia legis*, on behalf of this Court, in place and instead of the U.S. Marshals.

3. The substitute custodian, in consideration of the U.S. Marshal's consent to the substitution of custody, will indemnify, hold harmless, and release the U.S. Marshal, the United States of America, their agents, servants, employees, and all others for whom they are responsible from any and all liability and responsibility arising out of the care and custody of the Vessel, her engines, tackle, appurtenances, furnishings, cargo, etc. from the date of the transfer of possession of the Vessel, her engines, tackle, appurtenances, furnishings, cargo, etc.

4. The substitute custodian shall also defend the U.S. Marshal, the United States of America, their agents, servants, employees, and all others for whom they are responsible, against all claims and actions arising out of said substitute custody as well as indemnify,

hold harmless, and be responsible for payment and satisfaction of all claims, judgments, attorneys' fees, costs, expenses, and disbursements that might arise out of or are incurred in defending against such claims or actions arising out of the substitute custody.

5. All costs to the U.S. Marshals must be paid prior to release of the Vessel.

6. The substitute custodian must prepare a receipt for the Vessel and the U.S. Marshal must attest to the date and time of release on a certified copy thereof.

7. During *custodia legis*, all necessary insurance policies will be maintained by the substitute custodian NMS, or if applicable, Plaintiff as advances to and on behalf of the substitute custodian, in order to provide coverage for the protection of the Vessel, Plaintiff, and the substitute custodian, as may be applicable. The expenses for insurance shall constitute administrative expenses.

8. Also during *custodia legis*, the substitute custodian must not permit repairs or changes to be made to the Vessel, except for routine maintenance required for the Vessel's safekeeping, or in emergency situations, without an order of this Court.

9. The substitute custodian must ensure that (1) the normal operations of the Vessel are conducted in such a manner so as not to cause loss or damage to the Vessel and (2) the Vessel remains within the waters of the State of California and Port of San Diego.

10. All such costs of said normal operations of the Vessel while under arrest shall constitute expenses that are *custodia legis* and administrative expenses. In accordance with Local Rule E.1, the costs of the Vessel are fixed at (1) $2,950.00 in one-time charges; (2) $1,106.00 in daily charges; and (3) a fifteen percent (15%) handling fee on third-party charges. S.D. Cal. Civ. R. E.1(c)(2).

11. This order will remain in effect until the earlier of either (1) the parties moving to dissolve it or (2) Wednesday, September 15, 2021, at which time the Court will hold a Status Conference to evaluate the continued necessity of the substitute custodian.

**IT IS SO ORDERED.**

DATED: July 16, 2021

**HON. ROGER T. BENITEZ**
United States District Judge