**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FLUENCE ENERGY, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>M/V BBC FINLAND, bearing International Maritime Organization No. 9593684 (the "Vessel"), its cargo, apparel, tackle, and appurtenances, etc. *in rem*,<br><br>    Defendant. | Case No.: 3:21-cv-01239-BEN-JLB<br>**Related Case:** 3:21-cv-02014-BEN-JLB<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO VACATE VESSEL ARREST; and**<br><br>**(2) DENYING MOTION TO DISMISS**<br><br>**[ECF No. 40]** |

## I. <u>INTRODUCTION</u>

Plaintiff FLUENCE ENERGY, LLC, a Delaware limited liability company ("Fluence") brings its Verified Complaint, *in rem*, against Defendant M/V BBC FINLAND, bearing International Maritime Organization No. 9593684 (the "Vessel"), its cargo, apparel, tackle, etc., *in rem*, for breach of a maritime contract and negligence, seeking arrest and money damages. *See* Complaint, ECF No. 1 ("Compl.").

Before the Court is Claimant Briese Schiffahrts GmbH & Co. KG MS Filsum's ("Owner") Motion to Vacate the Arrest of the Vessel and Dismiss the Case (the "Motion"). Owner brings the Motion pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure ("Rule E(4)(f)").  After considering the papers submitted, supporting documentation, the parties' oral arguments, and applicable law, the Court **DENIES** (1) Owner's Motion to Vacate the Arrest of the Vessel, ECF No. 40-1; and (2) Owner's Motion to Dismiss the Case, ECF No. 40-1.

## II. BACKGROUND

Fluence alleges breach of maritime contract and negligence resulting from damage to marine cargo aboard the Vessel, occurring while in route from Hai Phong, Vietnam to San Diego, California.  Compl. at 3[1], ¶ 10; 8, ¶ 42; 9, ¶ 49.

### A. Statement of Relevant Facts

#### 1. *Fluence's Verified Complaint*[2]

Fluence "provides grid-scale, industrial-strength energy storage by lithium batteries, referred to as Gen6 Cubes ("Cubes")."  Compl. at 2 ¶ 5.  The Cubes are manufactured in Vietnam, packed into containers, and shipped to the United States.  *Id.* at 2–3, ¶ 5.

"On February 25, 2021, Fluence . . . contracted with DB Schenker ("DBS") to serve as a Non-Vessel-Operating Common Carrier [("NVOCC")] in booking the loading, stowage, and carriage of the cargo[3] . . . and preparing the necessary shipping contracts with the Vessel interests."  *Id.* at 4, ¶ 14.  Pursuant to "the contract of carriage, DBS agreed to ship the cargo . . . from the" Hai Phong port to locations in California.  *Id.* at 5, ¶ 17.

---

[1] Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

[2] The majority of the facts set forth herein are taken from Plaintiff's Verified Complaint, and for purposes of ruling on the instant Motion, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[3] Fluence's cargo will be referred to as the "Cargo" and consists of 333 containers holding 954 Cubes, 13 containers holding accessories, and 2 containers holding CRTs.  Compl. at 5, ¶ 19.

"Between February and April 2021 . . . the Cargo [was transported] by truck in 333 containers from the[] Vietnam factory to the [port in] Hai Phong . . . ." *Id.* at 4, ¶ 15.  On April 15, 2021, the Cubes were properly loaded in apparent good order and condition at the Hai Phong port for carriage to San Diego, California.  *Id.* at 3, ¶ 10; 7, ¶ 39.  Fluence alleges the total value of the cargo aboard the Vessel was $109,677,308.50. *Id.* at 5, ¶ 22.

Also on April 15, 2021, "DBS entered into four written maritime contracts titled 'SCHENKER*ocean* Non-Negotiable SEA WAYBILL for Combined Transport . . . .'" (the "Sea Waybills"), wherein DBS agreed to accept and safely load and carry Fluence's Cargo aboard the Vessel.  *Id.* at 5, ¶19.  DBS agreed to "discharge the Cargo at San Diego, California . . . ."  *Id.*  Fluence's Cargo was the only cargo carried aboard the Vessel for that voyage.  *Id.* at 5, ¶ 20.  The Vessel "had the non-delegable duty to safely load, stow, carry, and deliver the Cargo in good order and condition to San Diego in accordance with the terms and conditions of the Sea Waybills."  *Id.*  Fluence signed the Non-Negotiable Sea Waybill, which redacts the Shipper/Exporter for reasons not explained to the Court but shows the Vessel as the BBC Finland; the port of loading as Hai Phong, Vietnam; and the port of discharge as San Diego, California.  Exhibit 1 to Compl.,[4] ECF No. 1-2 at 2.

On April 28, 2021, "rolling, pitching, and pounding with persistent heavy sea spray over the deck" of the Vessel was reported, causing the Vessel to make course and speed changes.  Compl. at 6, ¶ 23.  "Because of a subsequent report of smoke in the cargo holds, the Vessel . . . ." diverted to Aomori, Japan to assess for damage.  *Id.* at 6, ¶ 24.

The Vessel arrived in Japan on May 8, 2021.  *Id.* at 6, ¶ 25.  "Upon arrival at the pier, the Vessel's interests and surveyors . . . investigate[d] the scope of damage to the Cargo."  *Id.*  "All containers were discharged . . . for inspection . . . to assess any damage to the containers and the potential need for salvage, repacking, and continued transshipment."  *Id.* at 6, ¶ 27.  Fluence alleges "the attending surveyors indicated that a

---

[4]   Plaintiff alleges that Exhibit 1 is "an exemplar Sea Waybill for one of the damaged containers," and "[a]ll of the waybills related to this incident are in the same form." Compl. at 3, ¶ 8.

-3-

cause of the collapsed and damaged containers in the Vessel's holds was due to improper usage of twist locks and insufficient lashing to the containers . . . ." *Id.* at 6, ¶ 28. An estimated 179 of 333 containers holding the Cargo suffered some damage, with an estimated 87 containers deemed damaged to the extent they could not safely be reloaded. *Id.* at 6, ¶ 29. Consequently, 87 containers remain in Japan. *Id.* at 7, ¶ 30.

On June 18, 2021, the Vessel left Aomori, Japan for San Diego, California but the Vessel was only partially loaded and therefore, "short the number of containers contracted for in the Sea Waybills." *Id.* at 7, ¶ 33. On or about July 8, 2021, the Vessel arrived in San Diego, California. ECF No. 7 at 7. Fluence estimates $30 million in damages to the Cargo caused by the Vessel, depending on the results of inspection. Compl. at 7, ¶ 35.

### 2. *Additional Facts in Fluence and Owner's Motion Briefing*

On February 25, 2021, Fluence and DB Schenker[5] entered into a contract of affreightment,[6] in which DB Schenker agreed to move Fluence's Cargo from Hai Phong, Vietnam to San Diego, California. Declaration of Mattias Becker, ECF No. 50 ("Becker Decl.") at 2, ¶ 4; *see also* ECF No. 51 ("Oppo.") at 9; Compl. at 4. ¶ 14.

On March 1, 2021, DB Schenker entered into a charter party or contract of affreightment, the "Booking Note," with BBC Chartering Carrier GmbH & Co. KG ("BBC").[7] Declaration of Thomas Bock, ECF No. 40-3 ("Bock Decl.") at 2–3, ¶ 6; Exhibit

---

[5]  DB Schenker is "the trade name of both Schenker Deutschland AG and Schenker Inc." ECF No. 51 at 9, ¶ 2. Accordingly, Schenker Deutschland AG and Schenker Inc. will be referred to as DB Schenker.

[6]  Fluence cites to the Declaration of Mattias Becker, ECF No. 50, but no Exhibits are attached evidencing the specific contract of affreightment. No Exhibits, in either parties' briefing, contains a contract or other agreement dated February 25, 2021. The Declaration of Matthew P. Vafidis, ECF No. 48, attaches the BIMCO Uniform Time Charter as Exhibit H, which is dated February 26, 2021. However, Fluence did not sign the BIMCO Uniform Time Charter, nor does Fluence mention it by name. Therefore, the contract of affreightment entered into by Fluence and DB Schenker dated February 25, 2021, does not appear in the briefing.

[7]  The Booking Note was signed by BBC Chartering Singapore Pte Ltd. on behalf of and acting as agents for BBC.

A to Bock Decl.; Declaration of Matthew P. Vafidis, ECF No. 48 ("Vafidis Decl.") at 3, ¶ 10; Exhibit D to Vafidis Decl.; *see also* Motion at 6; Oppo. at 9.  The Booking Note arranged for the Vessel to carry an unspecified amount (but no less than 250 Cubes) of Fluence's Cargo.  Exhibit A to Bock Decl. at 5; Exhibit D to Vafidis Decl. at 59.; *see also* Motion at 6.  On April 1, 2021, DB Schenker and BBC executed an Addendum to the Booking Note, which provided specifics on the Cargo being shipped.  Exhibit E to Vafidis Decl. at 65; *see also* Oppo at 9.  Special Clause B(i) of the Booking Note reads:

> In case the Contract evidenced by this Bill of Lading covers a shipment to or from a port in the United States, including any US territory, the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA) shall apply . . . . In the event that U.S. COGSA applies, then the carrier may, at the Carrier's election commence suit in a court of proper jurisdiction in the United States in which case this court shall have exclusive jurisdiction.

Exhibit A to Bock Decl. at 7; Exhibit D to Vafidis Decl. at 61.

On April 13 and 14, 2021, Fluence's Cargo was loaded on the Vessel in Haiphong, Vietnam.  Becker Decl. at 3, ¶ 7; Exhibit A to Becker Decl. at 5; s*ee also* Oppo. at 9.  Also on April 14, 2021, BBC issued four bills of lading (the "Bills of Lading"), which named Fluence as the shipper, BBC as the carrier, and Schenker, Inc. as the consignee (or freight forwarder).  Bock Decl. at 3, ¶ 7; Exhibit B to Bock Decl. at 11, 16, 22, 25; Vafidis Decl. at 3, ¶ 9; Exhibit C to Vafidis Decl. at 41, 46, 52, 55; *see also* Motion at 6.  Special Clause B(iv) of the Bills of Lading included the following terms:

> Whenever the U.S. COGSA applies, whether by virtue of carriage of cargo to or from the US or otherwise, any dispute arising out of or in connection with the Contract of carriage evidenced by this Bill of Lading shall be exclusively determined by the United States District Court for the Southern District of Texas, and in accordance with the laws of the United States. Merchant further agrees to submit to the jurisdiction of the Southern District of Texas and to waive any and all objections to venue.

Exhibit B to Bock Decl. at 12, 17, 23, 26; Exhibit C to Vafidis Decl. at 42, 47, 53, 56.

On April 15, 2021, DB Schenker (through Schenker Deutschland AG) issued four

Sea Waybills on behalf of NVOCC and affiliate entity, Schenker*Ocean*.  Becker Decl. at 3, ¶ 8; Exhibit B to Becker Decl.; *see also* Oppo. at 10.

### B. Procedural History

#### 1. *The Instant, California Litigation*

On July 8, 2021, Fluence filed suit alleging (1) breach of maritime contract of carriage and (2) negligence.  Compl. at 7–9.  On the same day, Fluence filed two *Ex Parte* Applications requesting the Court arrest the Vessel, appoint a substitute custodian, and permit normal operations of the Vessel while under arrest.  ECF Nos. 5, 6.  On July 9, 2021, this Court granted in part Fluence's *Ex Parte* Applications, authorizing the arrest of the Vessel and allowing for normal operations while under arrest, but denying appointment of a substitute custodian.  ECF No. 7.

On July 16, 2021, Fluence and Owner filed a Joint Motion to Appoint a Substitute Custodian and a Joint Motion to Release the Vessel From Arrest.  ECF Nos. 16, 19.  The Court granted both Motions.  ECF Nos. 18, 21.

On August 13, 2021, the Vessel answered Fluence's Complaint, listing *forum non conveniens* and improper venue as affirmative defenses.  ECF No. 26 at 7–8, ¶¶ 17, 18.  The Vessel based these assertions on the terms of the Bills of Lading.  *Id.* at 7, ¶ 17.

On October 15, 2021, Owner filed the instant Motion to Vacate the Vessel Arrest and Dismiss the case.  Motion.  On November 22, 2021, Fluence filed its Response in Opposition to Owner's Motion, along with supporting declarations of Mattias Becker, Julia M. Haines, and Matthew P. Vafidis.  Oppo.; Becker Decl.; Vafidis Decl.; ECF No. 49.  On December 6, 2021, Owner filed its Reply.  ECF No. 53 ("Reply").

On December 8, 2021, Fluence and Owner filed a Joint Request for Oral Argument as to Defendant's Motion to Vacate Arrest and Dismiss Action, which the Court granted on December 17, 2021.  ECF Nos. 54, 55.  On February 7, 2022, the Court heard Oral Argument.  ECF No. 62.

### 2. *The Texas Litigation*

On July 9, 2021, BBC filed a complaint against Fluence[8] for declaratory judgment in the Southern District of Texas. Declaration of Frank C. Brucculeri, ECF No. 40-2 ("Brucculeri Decl.") at 2, ¶ 5; Declaration of Julia M. Haines, ECF No. 49 ("Haines Decl.") at 2, ¶ 3.

On September 23, 2021, Fluence filed a motion to transfer to the Southern District of California. Supplemental Declaration of Frank C. Brucculeri, ECF No. 53-1 ("Supp. Brucculeri Decl.") at 2, ¶ 5–6; Exhibit A to Supp. Brucculeri Decl. at 10; Haines Decl. at 2, ¶ 8; Exhibit D to Haines Decl. at 53–72. Fluence based its argument for transfer on the "first to file rule," which allows a court to refuse to hear a case when the issues in related and previously filed litigation, pending before another federal court, substantially overlap. Exhibit A to Supp. Brucculeri Decl. at 11–13; Exhibit D to Haines Decl. at 62–63. Fluence's California action was filed one day before BBC filed its Texas action. Exhibit A to Supp. Brucculeri Decl. at 8–9. BBC argued the forum-selection clause in the Bills of Lading, specifying the Southern District of Texas as the proper forum, precluded transfer. *Id.* at 14.

On December 1, 2021, the Texas Court ruled in favor of Fluence and transferred the case to the Southern District of California. *Id.* at 16. The Texas Court cited several cases granting transfers pursuant to the "first to file rule" despite forum-selection clauses specifying the Southern District of Texas as the appropriate forum. *Id.* at 14–15.

### III. LEGAL STANDARD

The Constitution extends the jurisdiction of federal courts "to all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2. "Congress, in turn, embodied that [judicial] power in a statute" vesting federal courts with exclusive jurisdiction over admiralty and maritime claims. *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 918 (9th Cir. 2002) (citing 28 U.S.C. § 1333(1)).

---

[8] Schenker Inc. and Schenker Deutschland AG (*i.e.*, DB Schenker) were also named in BBC's Complaint.

## IV. DISCUSSION

Owner makes two overarching arguments in its Motion. First, if reading the Complaint broadly, Owner argues Fluence accepted the terms of the Bills of Lading, including the forum-selection clause therein, by making references to other contracts and agreements in its Complaint. Motion at 13–16. Owner explains, given the language, those referenced contracts/agreements implicitly included the Bills of Lading. *Id*. Second, if reading the Complaint narrowly, Owner argues Fluence failed to make a prima facie case for arrest of the Vessel because Fluence based its breach of contract claim on the non-binding Sea Waybill attached as Exhibit 1 to the Complaint. Motion at 9. Owner also argues Fluence's negligence claim is nominal because it is swept up in Fluence's contractual allegations. Reply at 7–8.

Fluence counters Owner should have brought a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), instead of a Rule E(4)(f) motion to vacate the arrest and dismiss the action. Oppo. at 23–24. Fluence argues the forum-selection clause in the Booking Note, and not that in the Bills of Lading, govern the issue of an appropriate forum. *Id*. at 26–29. Fluence further contends *in rem* liability exists regardless of which contract governs the dispute, because Fluence's cargo was damaged while aboard the Vessel. *Id*. at 15–18. Finally, Fluence argues it made a valid prima facia case for an *in rem* arrest of the Vessel pursuant to Rule E and Rule C of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure ("Rule C"), and that Owner's argument the Sea Waybills are not binding creates factual disputes. Oppo. at 13–18.

### A. Procedural Mechanism to Enforce Forum-Selection Clause

In *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, the Supreme Court held that "[t]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." 571 U.S. 49, 55 (2013). In the federal court system, "Congress has replaced the traditional remedy of outright dismissal with transfer" pursuant to 28 U.S.C. § 1404(a). *Id*. However, *Atlantic Marine* also held "the same standards should apply to motions to dismiss for *forum non*

*conveniens* in cases involving valid forum-selection clauses," because "dismissal would work no injustice on the plaintiff." 571 U.S. at 66 n.8. *See also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091 (9th Cir. 2018) (quoting *Atlantic Marine*, 571 at 66 n.8) ("A court must dismiss a suit filed 'in a forum other than the one specified in a valid forum-selection clause,' even if it 'makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate.'").

"When reviewing a [§ 1404(a)] motion to transfer venue ... a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17-cv-87-GPC-MDD, 2017 WL 1838955, at *9 (S.D. Cal. May 8, 2017) (quoting *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. Aug. 19, 2011)).

The party "defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63. Generally, in deciding a motion to transfer, courts consider both private and public interest factors but when deciding a transfer based on a forum-selection clause, the court should consider only public interest factors, because the clause acts as a waiver of the plaintiff's private interests. *Id.* at 64.

Fluence argues Owner did not follow the "proper procedural path" in seeking to enforce the forum-selection clause at issue, because it filed a Rule E(4)(f) Motion instead of a motion to transfer pursuant to 28 U.S.C. § 1404(a). Oppo. at 23–24. Fluence claims Owner is attempting to avoid the burden of weighing private and public interest factors favoring transfer. *Id.* at 23–24. Owner does not address whether its Rule E Motion is appropriate and replies that it did not file a motion to transfer because dismissal is the proper remedy. Reply at 3.

Although the proper mechanism to enforce a forum-selection clause is a § 1404(a) motion to transfer venue, *Atlantic Marine* also held that the result of enforcing a forum-

-9-

selection clause pursuant to §1404(a) would be dismissal. 571 U.S. at 56, 66 n.8. Furthermore, in the event of a valid forum-selection clause, the burden would be on Fluence to establish public interest factors, and private interest factors would be disregarded. However, based on the evidence presented, the Court finds Fluence is not bound by the terms of the forum-selection clause in the Bills of Lading and therefore, the clause is unenforceable. *See infra* Part IV.B.

### B. Rule E(4)(f) Challenge of Forum-Selection Clause in Bills of Lading

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, (1972)). Federal courts, including the Ninth Circuit, have a long history of upholding forum-selection clauses in bills of lading. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 108–11 (2010) (enforcing a forum selection clause in a bill of lading); *Fireman's Fund Ins.*, 131 F3.d at 1339–40 (same); *Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY*, 408 F.3d 1250, 1255 (9th Cir. 2005) (same); *Mazda Motors of Am., Inc. v. M/V COUGAR ACE*, 565 F.3d 573, 580 (9th Cir. 2009) (same); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995) (upholding a foreign arbitration clause in the bills of lading).

"Enforcement is 'unreasonable' where it would 'contravene a strong public policy of the forum in which suit is brought.'" *Fireman's Fund*, 131 F.3d at 1338 (quoting *M/S Bremen*, 407 U.S. at 15). In discussing forum-selection clauses, the Supreme Court has held "[a] clause of this kind is enforced unless it imposes a venue 'so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court.'" *Kawasaki*, 561 U.S. at 109–10 (2010) (quoting *M/S Bremen*, 407 U.S. at 18).

The issue here is whether Fluence accepted the terms of the forum-selection clause in the Bills of Lading. Reading the Complaint broadly, Owner argues Fluence accepted the Bills of Lading terms when it based its suit on the various contracts involved in this

action. Motion at 13–15. Although Fluence did not refer specifically to the Bills of Lading in its Complaint, Owner contends Fluence made several vague references to them when discussing "***agreements constituting the contract of carriage***," "***the applicable contracts***," and the "***necessary shipping contracts with the Vessel interests***." *Id.* at 13–14 (citing Compl. at 4, ¶14; 8, ¶¶ 41, 45). For example, Owner explains that Fluence based its suit, at least in part, on the agreement between DB Schenker and Fluence, wherein DB Schenker "contracted to serve as [NVOCC] . . . and "agreed not only to book the loading, stowage, and carriage of the Cargo aboard the Vessel but also to 'prepar[e] the ***necessary shipping contracts with the Vessel interests***.'" Motion at 13–14 (citing Compl. at 4, ¶¶ 19–22). Owner argues this assertion refers to the Bills of Lading, because they are "'necessary' to the overall contract of carriage" and "those necessary 'shipping contracts' would be contracts with Vessel interests . . . ." Motion at 14.

Owner further contends there is mandatory language in the Bills of Lading forum-selection clause, and that such clauses are presumptively valid when litigating commercial maritime contracts. Motion at 17; Exhibit B to Bock Decl. at 12, 17, 23, 26 ("[A]ny dispute arising out of or in connection with the Contract of carriage evidenced by this Bill of Lading shall be exclusively determined by the United States District Court for the Southern District of Texas . . . ."). Owner asserts the clause should be enforced unless Fluence shows "enforcement would be unreasonable and unjust or that it was invalid from its inception due to formation issues such as fraud, mutual mistake, or impossibility." Motion at 16.

Fluence contends it was unaware of and had not seen the Bills of Lading prior to filing suit. Oppo. at 11, 22; Becker Decl. at 3, ¶ 10. Fluence also argues that because this was a contract of private carriage, the terms of the Booking Note, "including its forum-selection clause [broadly allowing for litigation in a court of proper jurisdiction], control." Oppo. at 25; Exhibit D to Vafidis Decl. at 61. Fluence explains the Booking Note and Addendum entered into by DB Schenker and BBC, "constituted a contract of private carriage, a voyage charter." Oppo. at 25. Fluence argues in these cases, the charter party agreement acts as the contract of carriage, and the Bills of Lading act as receipts. *Id.*

-11-

Fluence maintains the Bills of Lading cannot unilaterally alter the terms of the Booking Note. *Id.* at 26.

Owner is correct that contracts and/or agreements other than the Sea Waybills are mentioned in Fluence's Complaint. However, Fluence did not specifically reference the Bills of Lading and claims it was unaware of them prior to filing suit. *Id.* at 11; Becker Decl. at 3, ¶ 10; Compl. One principle behind enforcing forum-selection clauses in bills of lading is that the choice of forum was bargained for. *See M/S Bremen*, 407 U.S. at 12 ("The choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts"). To the extent Fluence was unaware of the Bills of Lading, and the forum-selection clause contained therein, it would be unreasonable to enforce the clause and disregard Fluence's choice of forum. *See also All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1431 (9th Cir. 1993) (quoting *C-ART, Ltd. v. Hong Kong Islands Line Am., S.A.*, 940 F.2d 530, 532 (9th Cir. 1991)) ("Bills of lading are contracts of adhesion, usually drafted by the carrier, and are therefore 'strictly construed against the carrier.'").

Owner relies on *Hyundai Liberty*, where the Ninth Circuit "held that a cargo owner 'accepts' a bill of lading to which it is not a signatory by bringing suit on it." 408 F.3d 1250, 1254 (9th Cir. 2005) (citing *All Pac. Trading*, 7 F.3d at 1432). However, in *Hyundai Liberty*, the "[p]laintiff filed suit on all 'applicable bills of lading'" and made several other references to the "bills of lading" in its complaint. 408 F.3d at 1254. Here, the Complaint does not specifically mention the Bills of Lading. *See generally* Compl.

This is one of those instances when enforcement of a forum-selection clause would be unreasonable or unjust. *See Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914–17 (9th Cir. 2019) (citing *M/S Bremen*, 407 U.S. at 15) (holding the district court erred in enforcing a forum-selection clause). Accordingly, the Court **DENIES** Owner's Motion to enforce the forum-selection clause in the Bills of Lading.

### C. Rule E(4)(f) Challenge to Fluence's Causes of Action

#### 1. Breach of Contract Claim

A complaint for an *in rem* action maritime claim must: (1) be verified; (2) describe the property that is the subject of the action with reasonable particularity; and (3) "state that the property is within the district or will be within the district while the action is pending." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(2); *see also Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 529 (9th Cir. 2018) ("To commence an action in rem against a vessel, the plaintiff must file a verified complaint that describes the vessel 'with reasonable particularity' and states that the vessel 'is within the district' or will be so 'while the action is pending.'"). If the plaintiff meets the conditions for an *in rem* action, "the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel . . . ." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. C(3)(a)(i). "Once the district court issue[s] warrants for the arrest of the . . . vessels pursuant to Rule C, and the warrants [are] successfully served, jurisdiction [i]s complete." *Barnes*, 889 F.3d at 529 (quoting *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 858 (9th Cir. 2005)). "After the vessel is arrested, the owner is entitled to 'a prompt post-seizure hearing at which he can attack the verified complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings up to that point.'" *Barnes*, 889 F.3d at 532 (citing, *inter alia*, Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(4)(f)). The plaintiff must then "show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(4)(f)).

Rule E(2)(a) sets forth additional requirements, instructing the plaintiff's complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. Adm. & Mar. Cl. R. E(2); *Russell v. U.S. Dist. Ct. For Cent. Dist. of California*, 182 F.3d 927 (9th Cir. 1999). The Ninth Circuit has not analyzed the standard articulated in Rule E(2), but some courts have held the language rises to the level of a heightened

pleading requirement. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 542 (4th Cir. 2013) (quoting *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002)) ("Rule E(2)(a)'s requirement for pleading specific circumstances is one part of the process which guards against the improper use of admiralty seizure proceedings. Thus, Rule E(2)'s heightened particularity in pleading requirement is always subject to the general standard that the complaint sufficiently notify the defendant of the incident in dispute and afford a reasonable belief that the claim has merit."); *Beluga Chartering GMBH v. Korea Logistics Sys. Inc.*, 589 F. Supp. 2d 325, 327 (S.D.N.Y. Dec. 8, 2008) ("[T]he plaintiff need not present evidence to support his claim, but the complaint must contain factual allegations to meet the heightened pleading standard of Supplemental Rule E(2)(a) . . . ."). However, "the precise boundaries of such a heightened pleading requirement are not clearly defined." *Vitol*, 708 F.3d at 542.

Cases in this and other districts have held that, at the Rule E(4)(f) hearing, the plaintiff bears the burden of proving there were reasonable grounds and probable cause to arrest the defendant's property. *See Sea Prestigio, LLC v. M/Y Triton*, No. 10-cv-2412-BTM-AJB, 2010 WL 5376255, at *2 (S.D. Cal. Dec. 22, 2010) (quoting *Del Mar Seafoods Inc. v. Cohen*, No. C 07-02952-WHA, 2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007)) ("The purpose of a Rule E(4)(f) hearing, however, is not to resolve these factual disputes, but rather to assess whether plaintiff's showing rises to the level of probable cause.").

Owner argues *in rem* jurisdiction is improper, because Fluence based its Complaint on the NVOCC-issued Sea Waybill, and the Vessel provides contrary "evidence that the . . . Bills [of Lading], including their forum-selection clause, govern the subject shipment." Motion at 9–10. Owner further contends that if Fluence's *in rem* action is based solely on the Sea Waybill, the action should be dismissed, because "the Vessel had never even seen, much less authorized, the Sea Waybill issued by Schenker*Ocean* to . . . . Fluence." *Id.* at 11–13. Owner contends neither it nor the Vessel were parties to the Sea Waybill, and that the relationship of the NVOCC, Schenker*Ocean*, to the Vessel is insufficient to ratify it based on the carriage of goods alone. *Id.* at 7, 12–13 (citing *Ins. Co. of N. Am. v. S/S Am.*

*Argosy*, 732 F.2d 299, 304 (2d Cir. 1984)).

Fluence argues it "has sufficiently met the standard for an *in rem* vessel arrest," citing the Rule C(2)'s requirement that the Complaint be verified, the property described with reasonable particularity, and that the property be within the district at the time of filing suit. Oppo. at 15; Vafidis Decl. at 2, ¶ 5; Exhibit A to Vafidis Decl. at 7. Fluence claims it could not have arrested the Vessel in Texas, because the Vessel never intended to go to Texas—the Vessel's voyage was from Hai Phong, Vietnam to San Diego, California. Oppo. at 15. The only place where an *in rem* arrest of the Vessel could take place was San Diego. *Id.* Fluence claims Owner is attempting "to draw the Court into a premature mini trial" and that it is "not 'required to prove its case just to defeat the motion to vacate.'" *Id.* at 13 (quoting *SMS Yacht Maint. V. One Nautique 210 Pleasure Vessel*, No. 23-cv-2038-IEG-NLS, 2012 WL 6737197, at *1 (S.D. Cal. Dec. 28, 2012) (quoting *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1211(9th Cir. 2010)). Instead, Fluence maintains it is only required to establish probable cause for the arrest, which it has already done. Oppo. at 13–15. Finally, Fluence contends the issue of which contract governs the action is often considered immaterial, and that "[t]he Vessel is liable *in rem* for breach of contract under the mutual lien theory, due to improper stowage of Fluence's Cargo." *Id.* at 18. Fluence explains that under this theory, once the Vessel sailed with Fluence's Cargo on board, the Vessel and Fluence were entitled to "reciprocal liens for non-performance of the contract of affreightment." *Id.* at 17 (citing *Krauss Brothers Lumber Co. v. Dimon S.S. Corp.*, 290 U.S. 117, 121–22 (1933)).

Owner replies again that it is not bound by the NVOCC issued Sea Waybills because they were issued "without the knowledge or authority of the Vessel or the charterer . . . ." Reply at 5. Owner further argues that Fluence is now asserting new legal theories—its mutual lien theory, and that the Booking Note governs and not the Sea Waybills—but these claims fails because the allegations did not form "the actual basis for the Vessel's arrest . . . ." *Id.* at 4–5. Owner also claims Fluence incorrectly characterizes the Booking Note as a charter party and the contract of affreightment. *Id.* at 9–10. Finally, Owner asserts the

terms of the Bills of Lading supersede the Booking Note. *Id.* at 10.

In arguing it is not liable under the Sea Waybills, Owner relies on *Argosy*. Motion at 12–13 (citing *Argosy*, 732 F.2d at 301–304). There, the question was "whether a ship may be held liable on a bill of lading issued by an NVOCC without the authorization of the ship's owner or charterer." *Argosy*, 732 F.2d at 302. The Second Circuit held that the owner in that case "cannot be said to have ratified the bill of lading; one cannot ratify an unauthorized agreement of which one is wholly unaware." *Id.* (citations omitted). The Court explained "the relationship of the NVOCC to the vessel is too insubstantial to permit adoption or application of a ratification doctrine based solely on the carriage of goods." *Id.* at 304. Fluence argues its case is distinguishable because in *Argosy*, there were several NVOCCs and the case focused on "one shipment among several hundred shipments and two separate ships." Oppo. at 19 (citing *Argosy*, 732 F.2d at 301). The owner could not have been "aware of bills of lading issued by 'hundreds of shippers and middlemen who book freight on each voyage.'" Oppo. at 20 (citing *Argosy*, 732 F.2d at 303–304). Here, the case involves a contract of private carriage, where "Fluence was *the sole shipper* pursuant to . . . [the] contract of affreightment with DB Schenker" and Owner "should be deemed to have ratified the contract." Oppo. at 21.

In *Argosy*, the Court decided whether the owner ratified and was therefore, liable under NVOCC-issued bills of lading. 732 F.2d at 302. Fluence also argues Owner's liability under the Sea Waybills pursuant to the mutual lien theory. Oppo. at 17–18. For purposes of the instant Motion, the Court will not decide whether Owner is liable under the Sea Waybills at issue. The Court will only decide whether Fluence satisfied its pleading requirements and burden pursuant to Owner's Rule E(4)(f) challenge.

Fluence brought suit based on the Sea Waybills, evidenced by its Complaint and its own statements. *See e.g.*, Compl. at 3, ¶ 8; Exhibit B to Brucculeri Decl. at 32 (Fluence stating it "sued under the Sea Waybills" in its motion to transfer the Texas action to the Southern District of California); Oppo. at 16 ("Fluence has adequately alleged contract-based *in rem* liability based on the . . . Sea Waybills"). However, the references to other

contracts/agreements in Fluence's Complaint, establish that Fluence does not rely solely on the Sea Waybills. For example, Fluence alleges damages based on "the material breaches of the Sea Waybills and the maritime contract of carriage . . . ." Compl. at 8, ¶ 45. This allegation distinguishes the Sea Waybills from the contract of carriage and establishes Fluence is basing suit on more than one agreement. Even Owner recognizes Fluence's references to several contracts/agreements in making its argument that Fluence accepted the Bills of Lading. *See supra* Part IV.B.

In this Court's July 9, 2021 Order Arresting the Vessel, Fluence met the requirements for arrest by filing its Verified Complaint, describing the Vessel with reasonable particularity, and alleging the Vessel was within the district at the time of filing suit. ECF No. 7 at 10–11. The parties do not dispute these facts, or the allegation that Fluence's Cargo was damaged while aboard the Vessel during shipment to San Diego, as set forth in Fluence's Complaint. However, a Rule E(4)(f) hearing imposes additional requirements on Fluence to prove arrest of the Vessel was proper, and Rule E(2)(a) sets forth heightened pleading requirements.

As to whether Fluence met its Rule E(4)(f) burden of proving probable cause, there is no requirement that a party alleging breach of contract and seeking arrest of a vessel must attach all applicable agreements to its verified complaint. However, Fluence must establish a prima facie claim for breach of contract. *Equatorial Marine*, 591 F.3d at 1210 ("[T]he district court properly vacated the attachment because Equatorial failed to show it had a valid prima facie breach of contract . . . claim against MISC."). A claim for relief for breach of contract under California law must show: (1) a legally enforceable contract between the parties; (2) the defendant's breach of that contract; and (3) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).

Fluence argues the issue of which contract governs the action is often immaterial. Oppo. at 18 (citing *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1113

(5th Cir. 1985)). This may be true in certain Circuit Courts, but Fluence must still plead a legally enforceable contract between the parties. The Sea Waybills attached to Fluence's Complaint and the Becker Decl. were issued by DB Schenker, names M/V BBC Finland as the Vessel, and Fluence alleges DB Schenker agreed to accept and safely load and carry the Cargo aboard the Vessel in Hai Phong, Vietnam and to deliver the Cargo to San Diego, California. Compl. at 5, ¶ 19. Fluence alleges "[p]ursuant to its obligations as carrier," the Vessel "had the non-delegable duty to safely load, stow, carry, and deliver the Cargo in good order and condition to San Diego in accordance with the terms and conditions of the Sea Waybills." *Id.* at 5, ¶ 20. Fluence further alleges the "Vessel is liable *in rem* to perform its obligations under the Sea Waybills . . . ." *Id.* at 8, ¶ 41.

Although Fluence alleges the Vessel is liable under the Sea Waybills, pursuant to maritime law, Owner alleges it was unaware of the Sea Waybills and makes legal arguments as to why it is not bound by them. Whether Owner is liable under the Sea Waybills is a factual dispute inappropriate for determination on Owner's Rule E(4)(f) Motion. *See Greger Leasing Corp. v. Barge PT. Potrero*, No. C-05-5117 SC, 2006 WL 889537, at *3 (N.D. Cal. Apr. 5, 2006) ("Despite the repeated efforts of the parties to turn a limited adversary hearing into a full-blown trial on the merits, the Court's inquiry at this point remains focused on the narrow issue of whether [the] [p]laintiff has demonstrated probable cause to believe a lien exists.").

Regarding the contract of carriage, Fluence alleges the Vessel "agreed, under a maritime contract of carriage, to carry, handle, and act as the bailees of the Cargo, and to discharge the Cargo at San Diego, California in good order and condition," which the Vessel failed to do. Compl. at 8, ¶ 40, 42. Reading the Complaint in the light most favorable to Fluence, it alleges a legally enforceable contract of carriage to which the Vessel was bound. Accordingly, the Court **DENIES** Owner's Motion seeking a Rule E(4)(f) dismissal of Fluence's breach of contract claim.

### 2. *Negligence Claim*

Regarding Fluence's negligence claim, Owner argues it is "styled as one for

negligence under a bailment theory, [but] is caught up in the broad sweep of the contract cause of action." Motion at 15. Fluence argues its negligence "claim provides an independent basis" for the Vessel's *in rem* liability, and that Owner failed to address the negligence claim in its Motion. Oppo. at 15. Owner replies that because Fluence incorporates its contractual allegations into its allegations for negligence, the negligence claim is "nominal" and cannot be extricated from its contract claim. Reply at 7–8.

Owner is correct in that Fluence incorporates its contract allegations into its claim for negligence. *See* Compl. at 9, ¶ 47. However, Fluence makes additional allegations. Fluence alleges the Vessel owed it "a duty of care to preserve, not damage and not lose the Cargo," and that "[u]nder the circumstances [as described in the factual and breach of contract allegations], the Defendant V[essel] negligently breached its duty as carrier, handler, or bailee with respect to the cargo." *Id.* at 9, ¶¶ 48–49. Fluence further pleads "the negligence, failures and omissions of Defendant Vessel, as aforesaid and as specified herein, give rise to an admiralty claim *in rem* . . . against the Vessel." *Id.* at 9, ¶ 51.

The Vessel received Fluence's Cargo in good condition, and the Cargo was damaged while aboard the Vessel. *Id.* at 3–4, ¶¶ 10. Fluence states these facts as material to all causes of action and incorporates them into its negligence claim—not just its claim for breach of contract. *Id.* Fluence further alleges the Vessel's conduct was the proximate cause of the damages. *Id.* at 9, ¶ 52. Thus, Fluence does not rely solely on its breach of contract allegations in pleading its negligence cause of action. *See id.* at 9, ¶¶ 48–53. It would be incorrect to dismiss Fluence's negligence claim because the facts underlying it overlap with those alleged in Fluence's breach of contract claim. *Albany Ins. Co. v. M.V. Istrian Exp.*, 61 F.3d 709, 710 (9th Cir. 1995) (citations omitted) ("[The Ninth] Circuit recognizes a maritime tort lien irrespective of contractual obligations."); *All Alaskan Seafoods, Inc. v. M/V Sea Producer*, 882 F.2d 425, 430 (9th Cir. 1989) ("If [the vessel's operator] breached its duty of care with respect to [the shipper] then that breach of duty can give rise to tort liability irrespective of contract obligations between the parties."). Accordingly, the Court **DENIES** Owner's Motion seeking a Rule E(4)(f) dismissal of

Fluence's negligence claim.

## V. CONCLUSION

For the foregoing reasons, and after considering oral argument and all briefing and Exhibits filed in connection to the instant Motion to Vacate the Vessel Arrest and Dismiss the Action, the Court **ORDERS** as follows:

1. Owner's Motion to Vacate the Vessel Arrest and Dismiss as to Fluence's Breach of Contract Claim is **DENIED**.

2. Owner's Motion to Vacate the Vessel Arrest and Dismiss as to Fluence's Negligence Claim is **DENIED**.

3. Owner's Motion to Vacate the Vessel Arrest and Dismiss based on the forum-selection clause is **DENIED**.

**IT IS SO ORDERED.**

DATED:   February 8, 2022

**HON. ROGER T. BENITEZ**
United States District Judge