UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLUENCE ENERGY, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>M/V BBC FINLAND, bearing International Maritime Organization No. 9593684 (the "Vessel"), its cargo, apparel, tackle, and appurtenances, etc. in rem,<br><br>         Defendant. | Lead Case No.:  21-cv-01239-BEN-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' DISCOVERY RESPONSES**<br><br>**[ECF No. 136]** |
| BBC CHARTERING CARRIERS GMBH & CO. KG,<br><br>         Plaintiff,<br><br>v.<br><br>FLUENCE ENERGY, LLC, et al.<br><br>         Defendant. | Member Case No.: 21-cv-02014-BEN-JLB |

Before the Court is a motion to compel filed by Plaintiff Fluence Energy, LLC ("Fluence").  (ECF No. 136.)  Fluence moves the Court to compel Defendant SchenkerOcean Limited ("SchenkerOcean") to fully respond to Fluence's third sets of

interrogatories and requests for production ("RFPs"). (*Id.* at 3.) SchenkerOcean filed an opposition. (ECF No. 141.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Fluence's motion to compel.

I. BACKGROUND

On July 26, 2022, Fluence served its third set of interrogatories on SchenkerOcean, which contains the following three interrogatories:

> **Interrogatory No. 13:** Identify all directors and officers of SchenkerOCEAN Ltd. and state their affiliation (e.g., employee, director, and/or officer), if any, with any other Schenker entities and their roles and titles with SchenkerOCEAN Ltd. and any other Schenker entities.
>
> **Interrogatory No. 14:** State the amount of rent that SchenkerOCEAN Ltd. pays to any other Schenker entity (including Schenker China Ltd.) for use of any physical and/or office space.
>
> **Interrogatory No. 15:** Identify all income streams of SchenkerOCEAN Ltd. other than $1.50 that SchenkerOCEAN Ltd. receives per group of bills of lading and/or sea waybills, as referenced in the Rule 30(b)(6) deposition of SchenkerOCEAN Ltd.'s representative Christoph Hilgers.

(ECF No. 136-1.)

On August 25, 2022, SchenkerOcean served objections. (ECF No. 136-3.) To each interrogatory, SchenkerOcean objected on the basis of relevance and harassment. (*Id.*) SchenkerOcean further stated:

> [T]here has been no claim by any of the Schenker entities that SchenkerOCEAN is not provided coverage under the Protection and Indemnity membership previously disclosed in this litigation. None of the Schenker entities has attempted to separate or distinguish itself from the others for liability assessment, and as such, the information responsive to this request has no bearing whatsoever on this litigation.

(*Id.*)

On July 2, 2022, Fluence served its third set of RFPs on SchenkerOcean, which contains the following RFPs:

///

**RFP No. 51:** SchenkerOCEAN Ltd.'s articles of incorporation and bylaws.

**RFP No. 52:** All notices of shareholder meetings issued by SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 53:** All meeting minutes of SchenkerOCEAN Ltd.'s board of directors from 2018 to present.

**RFP No. 54:** All corporate resolutions and/or other documents issued by SchenkerOCEAN Ltd.'s board of directors.

**RFP No. 55:** All contracts entered into between SchenkerOCEAN Ltd. and Schenker Deutschland AG.

**RFP No. 56:** All balance sheets for SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 57:** All financial statements for SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 58:** All profit and loss statements for SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 59:** All schedules of assets and liabilities for SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 60:** All tax returns for SchenkerOCEAN Ltd. from 2018 to present.

**RFP No. 61:** All powers of attorney and/or contracts authorizing any Schenker entity to act on behalf of SchenkerOCEAN Ltd., as referenced in the Rule 30(b)(6) deposition of SchenkerOCEAN Ltd.'s representative Christoph Hilgers.

**RFP No. 62:** All insurance agreements and/or policies, as well as coverage declarations pages for such agreements/policies, under which any insurance company and/or business may be liable: (1) to satisfy all or part of a possible judgment in this action against SchenkerOCEAN Ltd., and/or (2) to indemnify or reimburse for payments made to satisfy, in whole or in part, any judgment that may be entered in this action against SchenkerOCEAN Ltd.

**RFP No. 63:** Produce documents evidencing and/or constituting payment of SchenkerOCEAN Ltd.'s corporate dues, fees, charges, and similar items to the jurisdiction under whose law SchenkerOCEAN Ltd. is incorporated.

**RFP No. 64:** All documents submitted to the jurisdiction under whose law SchenkerOCEAN Ltd. is incorporated since 2018 that identify SchenkerOCEAN, Ltd., its directors, its officers, and/or its purpose.

(ECF No. 136-2.)

On August 25, 2022, SchenkerOcean served objections. (ECF No. 136-4.) SchenkerOcean objected to each request, except for RFP No. 62, on the basis of relevance and harassment. (*Id.*) SchenkerOcean further stated:

> [T]here has been no claim by any of the Schenker entities that SchenkerOCEAN is not provided coverage under the Protection and Indemnity membership previously disclosed in this litigation. None of the Schenker entities has attempted to separate or distinguish itself from the others for liability assessment, and as such, the information responsive to this request has no bearing whatsoever on this litigation.

(*Id.*) For RFP No. 62, SchenkerOcean objected to the request as duplicative of prior requests and therefore unduly burdensome and harassing. (*Id.* at 11.) On the basis of its objections, SchenkerOcean did not produce any documents. (ECF No. 136 at 3.)

The parties raised the present dispute with the Court on October 28, 2022. (ECF No. 131.) The Court held a Discovery Conference to address this dispute on November 21, 2022. (ECF Nos. 133, 134.) As agreed during the Conference, SchenkerOcean produced any powers of attorney between Schenker AG and SchenkerOcean, partially resolving RFP No. 61. (ECF No. 136 at 4.) The Court thereafter ordered the parties to continue to meet and confer and set a briefing schedule to resolve their remaining disputes. (ECF No. 134.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery of any nonprivileged information discoverable under Rule 26 if it is (1) relevant, and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1), as amended in 2015, provides that parties—

> may obtain discovery regarding any nonprivileged matter that is relevant to

> any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.*

Evidence must be "relevant to any party's claim or defense" to fall within the scope of permissible discovery. *Id.* The 2015 amendment to Rule 26(b) deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery and had the potential to "swallow any other limitation." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. *See also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 15CV1401-BEN-MDD, 2017 WL 3877732, at *1 (S.D. Cal. Sept. 5, 2017). The amendment replaced this phrase with the statement that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment.

Information must also be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

Under Federal Rule of Civil Procedure 34, a party may request the production of documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). Under Federal Rule of Civil Procedure 33, any party may serve interrogatories that relate to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). If a party fails to produce documents pursuant to Rule 34 or answer an interrogatory under Rule 33, the propounding party may bring a motion to compel. *See* Fed. R. Civ. P. 37(a).

## III. DISCUSSION

### A. Parties' Arguments

Fluence argues that its discovery requests are relevant to determining whether SchenkerOcean is the alter ego of Defendant Schenker Deutschland AG ("Schenker AG"). (ECF No. 136 at 5.) Fluence contends that during the Federal Rule of Civil Procedure 30(b)(6) deposition of the representative for the various Schenker Defendants,[1] Christoph Hilgers, Mr. Hilgers provided testimony suggesting that SchenkerOcean could be an alter ego of Schenker AG or another Schenker entity. (*Id.* at 3.) According to Fluence, Mr. Hilgers's testimony revealed that:

> (1) other than two directors, SchenkerOcean has no officers or employees, Hilgers Dep. 23:19–24:13, 4:24–25:6 (May 24, 2022); (2) SchenkerOcean only works for other Schenker entities, Hilgers Dep. 36:25–37:7 (May 5, 2022); (3) SchenkerOcean has given powers of attorney to other Schenker entities, and those entities, not SchenkerOcean, negotiate the contracts evidenced by SchenkerOCEAN shipping documents, Hilgers Dep. 30:22–31:10 (May 24, 2022); (4) SchenkerOcean's two directors do not prepare the shipping documents that SchenkerOcean issues, Hilgers Dep. 38:8-11 (May 5, 2022); (5) SchenkerOcean's sole shareholder is another Schenker entity, Hilgers Dep. 22:22–23:8 (May 24, 2022); and (6) SchenkerOcean's directors hold positions with other unknown Schenker entities, *id.* at 25:9–22.
>
> Moreover, Mr. Hilgers revealed that SchenkerOcean receives only $1.50 per set of bills of lading or sea waybills that it issues, regardless of the value of the cargo. *Id.* at 46:13–47:6. Here, this means that SchenkerOCEAN likely received just $1.50 for issuing four sea waybills relating to the shipment of nearly $110 million in cargo that resulted in 8-figure damages.

(ECF No. 136 at 3–4.)

In response, SchenkerOcean argues that Mr. Hilgers never suggested during his deposition that SchenkerOcean was inadequately capitalized. (ECF No. 141 at 2.) SchenkerOcean contends that Mr. Hilgers testified during his deposition that

---

[1]   SchenkerOcean, Schenker, Inc. and Schenker Deutschland AG are all parties to this case.

SchenkerOcean was incorporated in Hong Kong in 2004 and that the company "serves as a non-vessel operating common carrier (NVOCC)[2] for the entire Schenker group of companies through representation agreements." (*Id.*) SchenkerOcean further contends that it has provided Fluence with substantial information, including public information regarding its incorporation, directors, annual returns, ownership of shares, and registered office, and advised Fluence that further information is publicly available from the Hong Kong Corporate Registry and Federal Maritime Commission. (*Id.* at 2–3.)[3]

On November 17, 2022, Schenker sent Fluence a "link to a financial report by SchenkerOcean's ultimate parent, Deutsche Bahn—the national railway company of Germany," which shows that "Deutsche Bahn owns 100% of SchenkerOcean's equity of

---

[2] "An NVOCC is an intermediary between the shipper of goods and the operator of the vessel that will carry the goods." *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1429 (9th Cir. 1993). "Generally, an NVOCC combines the goods of various shippers into a single shipment, contracts with a vessel for the transportation of the goods, and delivers the goods to the vessel, usually in a sealed container." *Id.* A NVOCC is defined by statute as "a common carrier that—(A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier." 46 U.S.C.A. § 40102(17).

[3] As noted above, as part of its discovery responses, SchenkerOcean stated, "None of the Schenker entities has attempted to separate or distinguish itself from the others for liability assessment, and as such, the information responsive to this request has no bearing whatsoever on this litigation." (*See* ECF Nos. 136-3; 136-4.) However, SchenkerOcean has not made this argument in its opposition to this motion. The Court declines to address any objections raised in SchenkerOcean's discovery responses that it did not reassert within its opposition brief to the instant motion. *Cf. Hall v. Marriott Int'l, Inc.*, No. 19-cv-01715-JLS-AHG, 2021 WL 1906464, at *9 (S.D. Cal. May 12, 2021) (quoting *SolarCity Corp. v. Doria*, No. 16-cv-3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018)) ("When ruling on a motion to compel, courts in this district 'generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel.'"); *Sherwin-Williams Co. v. Earl Scheib of Cal., Inc.*, No. 12-cv-2646-JAH-JMA, 2013 WL 12073836, at *2, n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in opposing the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs).

7,245,000 HKD (roughly $1M USD)."[4] (*Id.* at 3.) SchenkerOcean contends that the corporate records provided corroborate Mr. Hilgers's testimony regarding the composition of the board and the ownership of the company. (*Id.*) Lastly, on December 1, 2022, Schenker also produced an internal "representation agreement" between SchenkerOcean and Schenker AG, which includes a requirement for indemnification of SchenkerOcean by Schenker AG. (*Id.*)

### B.     Alter Ego

"Admiralty courts may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). "Federal courts sitting in admiralty generally apply federal common law when examining corporate identity." *Id.* "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." *Id.* (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)).

To pierce the corporate veil, a party must show that (1) "the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own,"(2) "injustice will result from recognizing [the subservient entity] as a separate entity," and (3) the controlling entity "had a fraudulent intent or an intent to circumvent statutory or contractual obligations." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 898 (9th Cir. 2021) (internal citations omitted). "Whether these elements are established is a fact-intensive inquiry, requiring the court to consider the totality of the record and circumstances." *Id.*

The following non-exhaustive list of factors are considered in determining whether to pierce the corporate veil:

---

[4] *See* Deutsche Bahn 2021 Integrated Report, *available at* https://www.dbschenker.com/resource/blob/780838/3e8cd9940577b99a6ab72560fd096c30/integrated-report-2021-en-data.pdf, p. 247.

(1) disregarding corporate formalities such as, for example, in issuing stock, electing directors, or keeping corporate records; (2) capitalization that is inadequate to ensure that the business can meet its obligations; (3) putting funds into or taking them out of the corporation for personal, not corporate, purposes; (4) overlap in ownership, directors, officers, and personnel; (5) shared office space, address, or contact information; (6) lack of discretion by the allegedly subservient entity; (7) dealings not at arms-length between the related entities; (8) the holding out by one entity that it is responsible for the debts of another entity; and (9) the use of one entity's property by another entity as its own.

*Id.*

### C.  Analysis

SchenkerOcean's financial and corporate information is relevant to the alter ego determination.  The parties do not appear to dispute this position.  Rather, SchenkerOcean argues that it has already provided Fluence with much of the information sought and the remaining requests are unduly burdensome and amount to nothing more than a "fishing expedition."  (ECF No. 141.)  The Court will address each request below.

#### 1.  Interrogatory No. 13

In Interrogatory No. 13, Fluence requests that SchenkerOcean "[i]dentify all directors and officers of SchenkerOCEAN Ltd. and state their affiliation (e.g., employee, director, and/or officer), if any, with any other Schenker entities and their roles and titles with SchenkerOCEAN Ltd. and any other Schenker entities."  (ECF No. 136-3 at 4.)  Fluence argues that this interrogatory is relevant to the issue of "overlapping ownership and personnel," one of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 8.)  Fluence contends that Mr. Hilgers testified that other than two directors, SchenkerOcean has no officers or employees and that these directors hold positions with other unknown Schenker entities.  (ECF No. 136 at 3–4.)

SchenkerOcean objected to this request; however, SchenkerOcean states in its opposition that the interrogatory is "unnecessary" because it has already provided Fluence with this information in other contexts.  (ECF No. 141 at 3–4.)  Specifically, SchenkerOcean's Rule 30(b)(6) witness, Mr. Hilgers, testified as to the identities of the

directors, their roles in other Schenker entities, and the ownership of SchenkerOcean, and Fluence has produced corporate records identifying the board members and the ownership of all stock in SchenkerOcean. (*Id.* at 4.)

The Court finds that the interrogatory is relevant and proportional to the needs of the case. Moreover, SchenkerOcean has not demonstrated that responding to the interrogatory would be unduly burdensome. *See, e.g.*, Fed. R. Civ. P. 33(d) (a party may answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection). Accordingly, Fluence's motion to compel is granted as to Interrogatory No. 13.

### 2. Interrogatory No. 14

In Interrogatory No. 14, Fluence requests that SchenkerOcean "[s]tate the amount of rent that SchenkerOCEAN Ltd. pays to any other Schenker entity (including Schenker China Ltd.) for use of any physical and/or office space." (ECF No. 136-3 at 5.) Fluence argues that this interrogatory is relevant to the issues of "shared office space, dealings not made at arms-length, and shared property," which are three of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 8.)[5] Fluence contends that Mr. Hilgers testified that other than two directors, SchenkerOcean has no officers or employees. (ECF No. 136 at 3.)

SchenkerOcean does not address whether this interrogatory is relevant to Fluence's alter ego theory; it simply argues that this interrogatory is not relevant to cargo damage on the BBC Finland. (ECF No. 141 at 4.)

The Court finds that the relevance of the requested information is minimal, particularly in these circumstances where it is unclear if SchenkerOcean even rents space from another Schenker entity. The Court further notes that Fluence argues in its motion

---

[5]  As noted by the Ninth Circuit, "[c]ourts have . . . found that 'superficial indicia of interrelatedness' such as shared office space and phone numbers are 'not dispositive of the [alter-ego] question,' instead looking to a corporation's 'practical operation' as 'more instructive.'" *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Coastal States Trading, Inc. v. Zenith Nav. S. A.*, 446 F. Supp. 330, 334 (S.D.N.Y. 1977)).

that its requests are "calculated to lead to the discovery of admissible evidence determining whether [] SchenkerOcean is merely the alter ego of Schenker AG." (ECF No. 136 at 5 (emphasis added).) As such, Fluence has not demonstrated the relevance of rent paid to Schenker China Ltd. or another Schenker entity.

For the foregoing reasons, the Court grants in part Interrogatory No. 13. SchenkerOcean shall respond to this Interrogatory, but only as to Schenker AG and limited in time between 2020[6] and the present.

### 3.     Interrogatory No. 15

In Interrogatory No. 15, Fluence requests that SchenkerOcean "[i]dentify all income streams of SchenkerOCEAN Ltd. other than $1.50 that SchenkerOCEAN Ltd. receives per group of bills of lading and/or sea waybills, as referenced in the Rule 30(b)(6) deposition of SchenkerOCEAN Ltd.'s representative Christoph Hilgers." (ECF No. 136-3 at 5.) Fluence argues that this interrogatory is relevant to the issue of "inadequate capitalization," which is one of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 8.)

SchenkerOcean argues that this interrogatory is not relevant to any claim or defense. (ECF No. 141 at 4.) SchenkerOcean further argues that Mr. Hilgers never suggested that SchenkerOcean was inadequately capitalized. (*Id.* at 2.) In this regard, SchenkerOcean claims that in meet and confer calls, counsel for Schenker explained that SchenkerOcean "issues hundreds of thousands of Bills of Lading and seaway bills in a largely automated process." (*Id.*) Therefore, although the fee is low, the volume is high. (*Id.* at 4.) SchenkerOcean further notes that a financial report issued by SchenkerOcean's parent, Deutsche Bahn, indicated that SchenkerOcean has an equity of roughly one million dollars. (*Id.* at 3.)

Although SchenkerOcean makes an argument for adequate capitalization, that issue is not before the Court. The Court finds that the interrogatory is relevant and proportional

---

[6] Fluence contracted with Schenker for the cargo shipment at issue in February 2021. (*See* ECF No. 1 at 4; ECF No. 77 at 8–9.)

to the needs of the case. Fluence contends that Mr. Hilgers testified that SchenkerOcean only works for other Schenker entities. (ECF No. 136 at 3.) As such, identifying all income streams apart from the Bills of Lading and seaway bills prepared for Schenker entities should not be unduly burdensome. Accordingly, Fluence's motion to compel is granted as to Interrogatory No. 15.

4. RFPs Nos. 51–54, 63 and 64

Fluence argues that RFPs Nos. 51–54, 63 and 64 seek the production of certain corporate records of SchenkerOcean which are relevant to the "potential disregard of corporate formalities" by SchenkerOcean, which is one of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 8–9.)

In RFP No. 51, Fluence seeks "SchenkerOCEAN Ltd.'s articles of incorporation and bylaws." (ECF No. 136-4 at 4.) In RFP No. 52, Fluence seeks "[a]ll notices of shareholder meetings issued by SchenkerOCEAN Ltd. from 2018 to present." (ECF No 136-4 at 5.) In RFP No. 53, Fluence seeks "[a]ll meeting minutes of SchenkerOCEAN Ltd.'s board of directors from 2018 to present." (*Id.*) In RFP No. 54, Fluence seeks "[a]ll corporate resolutions and/or other documents issued by SchenkerOCEAN Ltd.'s board of directors." (ECF No 136-4 at 6.)

In RFP No. 63, Fluence seeks all "documents evidencing and/or constituting payment of SchenkerOCEAN Ltd.'s corporate dues, fees, charges, and similar items to the jurisdiction under whose law SchenkerOCEAN Ltd. is incorporated." (ECF No 136-4 at 11.) In RFP No. 64, Fluence seeks "[a]ll documents submitted to the jurisdiction under whose law SchenkerOCEAN Ltd. is incorporated since 2018 that identify SchenkerOCEAN, Ltd., its directors, its officers, and/or its purpose." (*Id.*)

SchenkerOcean asserts that many of the requested documents are in Fluence's possession, and many of the corporate records are online and equally available to Fluence. (ECF No. 141 at 4.) SchenkerOcean further asserts that these RFPs are not proportional to the needs of the case, in that they seek "years of documents because of a 'potential

disregard' of formalities" and not even a "shred of evidence that any corporate formality was disregarded." (*Id.*)

SchenkerOcean has already produced its Certificate of Incorporation, Statement on Compliance on Incorporation of a Company, Memorandum and Articles of Association, Annual Returns for 2019–2022, and notices for change of company secretary and director and change of address. (*Id.* at 2–3.) SchenkerOcean has further informed Fluence that additional records are available online with the Hong Kong Corporate Registry and Federal Maritime Commission. (*Id.* at 3.)

Given the foregoing, the Court finds that although the foregoing requests are relevant to determining whether SchenkerOcean has complied with corporate formalities, they are not proportional to the needs of the case. SchenkerOcean has substantially provided Fluence with the information requested and directed Fluence to additional publicly available information. Production of the remainder of the documents requested would be burdensome and not supported by the potential value, where Fluence has not pointed to any evidence of a failure to comply with corporate formalities. Accordingly, the Court denies Fluence's motion to compel further response to these RFPs.

### 5.   RFPs Nos. 56–60

Fluence argues that RFPs Nos. 56–60 seek the production of certain financial records of SchenkerOcean which are relevant to showing "inadequate capitalization," which is one of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 9.)

In RFP No. 56, Fluence seeks "[a]ll balance sheets for SchenkerOCEAN Ltd. from 2018 to present." (ECF No 136-4 at 7.) In RFP No. 57, Fluence seeks "[a]ll financial statements for SchenkerOCEAN Ltd. from 2018 to present." (ECF No 136-4 at 8.) In RFP No. 58, Fluence seeks "[a]ll profit and loss statements for SchenkerOCEAN Ltd. from 2018 to present." (*Id.*) In RFP No. 59, Fluence seeks "[a]ll schedules of assets and liabilities for SchenkerOCEAN Ltd. from 2018 to present." (ECF No 136-4 at 9.) In RFP No. 60, Fluence seeks "[a]ll tax returns for SchenkerOCEAN Ltd. from 2018 to present." (*Id.*)

As previously stated, SchenkerOcean argues that Mr. Hilgers never suggested that SchenkerOcean was inadequately capitalized or might serve as the alter ego of another entity. (ECF No. 141 at 2.) SchenkerOcean further states that it has provided Fluence with Annual Returns for 2019–2022, which include information reflecting, *inter alia*, SchenkerOcean's total amount of indebtedness, share capital, and ownership of shares, as well as a financial report from SchenkerOcean's parent company showing its capitalization and argues that the search for the additional documents requested would require efforts disproportionate to the needs of the case. (*Id.* at 2–3, 4–5.) In addition, SchenkerOcean points out that Fluence should not be able to rely on *Pac. Gulf Shipping Co.* for the production of these documents because that case does not address the proper scope of discovery and Fluence has made no showing of ill intent on behalf of any of the Schenker entities, which is one of the alter ego factors. . (*Id*. at 5.)[7]

In light of SchenkerOcean's representations regarding its production, the Court finds that SchenkerOcean has provided Fluence with sufficient information regarding its capitalization. Any further production is not proportional to the needs of this case. Accordingly, the Court denies Fluence's motion to compel further responses to these RFPs.

6. RFP No. 61[8]

In RFP No. 61, Fluence seeks "[a]ll powers of attorney and/or contracts authorizing any Schenker entity to act on behalf of SchenkerOCEAN Ltd., as referenced in the Rule 30(b)(6) deposition of SchenkerOCEAN Ltd.'s representative Christoph Hilgers." (ECF No 136-4 at 10.) Fluence argues that RFP No. 61 seeks the production of information

---

[7] *See Pac. Gulf Shipping Co.*, 992 F.3d at 899 (in order to pierce the corporate veil a party must demonstrate "injustice from failing to pierce the veil and ill intent on the part of the dominating entity" as well as domination and control).

[8] As an initial matter, during the informal Discovery Conference in this matter, SchenkerOcean agreed to produce any powers of attorney between Schenker AG and SchenkerOcean, partially resolving the dispute as to this RFP. (*See* ECF No. 136 at 4.) Although SchenkerOcean does not mention this resolution in their opposition, the Court assumes these documents have been produced.

which is relevant to showing "lack of discretion and dealings not made at arms-length," which are two of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 9.) Fluence contends that Mr. Hilgers testified that SchenkerOcean has given powers of attorney to other Schenker entities, and those entities, not SchenkerOcean, negotiate the contracts, as evidenced by SchenkerOcean shipping documents. (*Id.* at 3.)

In response, SchenkerOcean contends that the request expansively seeks *all* agreements between SchenkerOcean and any other Schenker entity. (ECF No. 141 at 5.) SchenkerOcean argues that the "burden of searching for and producing agreements with all Schenker entities is not proportional to the needs of this case." (*Id.*) SchenkerOcean contends that Mr. Hilgers testified during his deposition that SchenkerOcean "serves as a non-vessel operating common carrier (NVOCC) for the entire Schenker group of companies through representation agreements." (ECF No. 141 at 2 (emphasis added).) SchenkerOcean further represents that it has already produced the representation agreement between SchenkerOcean and Schenker AG. (*Id.*)

Given the foregoing and taking into consideration the prior partial resolution of this dispute, the Court denies Fluence's motion to compel a further response to this RFP. SchenkerOcean has already produced its representation agreement with Schenker AG and has agreed to produce any powers of attorney between itself and Schenker AG. For the reasons stated above, Fluence has not demonstrated the relevance of powers of attorney and/or contracts with any other Schenker entity. In addition, the Court finds that the production of additional agreements between SchenkerOcean and Schenker AG would not be proportional to the needs of the case.

7. <u>RFP No. 62</u>

Lastly, in RFP No. 62, Fluence seeks "[a]ll insurance agreements and/or policies, as well as coverage declarations pages for such agreements/policies, under which any insurance company and/or business may be liable: (1) to satisfy all or part of a possible judgment in this action against SchenkerOCEAN Ltd., and/or (2) to indemnify or reimburse for payments made to satisfy, in whole or in part, any judgment that may be

entered in this action against SchenkerOCEAN Ltd." (ECF No 136-4 at 10.) Fluence argues that RFP No. 62 seeks the production of information which is relevant to showing "lack of discretion, dealings not made at arms-length, and Schenker AG's responsibility for SchenkerOcean's debt," which are three of the *Pac. Gulf Shipping Co.* factors. (ECF No. 136 at 9.)

In response, SchenkerOcean represents that in July 2022, Schenker provided Fluence with the Certificate of Entry for Schenker Deutschland AG from Gard. (ECF No. 141 at 5.) The certificate states: "The cover shall at the request of the Assured(s) be extended to liabilities, losses, costs and expenses incurred by a person or company affiliated or associated with the Assured(s)." (*Id.*) The representation agreement between SchenkerOcean and Schenker AG referenced above further "requires Schenker AG to indemnify SchenkerOcean for claims related to cargo shipments." (*Id.* at 6.) As such, SchenkerOcean argues that "Fluence has not explained why it needs any further documents or what those documents would be." (*Id.*)

Under Rule 26(a)(1)(A)(iv), a party to a civil action must produce to other parties at the outset of the litigation "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). Given the foregoing, the Court grants Fluence's motion to compel further response from SchenkerOcean with respect to clause RFP No. 62, to the extent such an insurance agreement exists.

**IV.   CONCLUSION**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART**, Fluence's motion to compel. <u>Within seven (7) days of the date of this Order,</u> SchenkerOcean shall provide updated responses to Fluence's Third Set of Interrogatories

///

///

///

and produce all documents responsive to Fluence's Third Set of Requests for Production of Documents, as set forth above.

**IT IS SO ORDERED.**

Dated:  June 22, 2023

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge